IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JENNI REBECCA ZAREMBA,

    Plaintiff,

vs.                                                Civ. No. 05-971 JP/LCS

UNITED STATES OF AMERICA,

    Defendant.

MEMORANDUM OPINION AND ORDER

On February 24, 2006, Defendant United States America ("the Government") filed a Motion to Dismiss, or in the Alternative, for Summary Judgment (Docket No. 16). In its motion, the Government argues that it is exempt from liability for Plaintiff Jenni Rebecca Zaremba's claims because the governmental conduct Plaintiff challenges in her complaint falls within the discretionary function exception to the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346(b); 28 U.S.C. § 2680(a). After review of the arguments of counsel, exhibits, and relevant law, the Court finds that the Government's motion should be granted.[1]

*I. Background*

Plaintiff lives with her two minor children in military base housing located on the Kirtland Air Force Base ("KAFB") in Albuquerque, New Mexico. SSgt. Little and Mrs. Little lived next door to Plaintiff's family. The Little's kept two pit bull dogs in their yard, which was enclosed by a fence. During the evening of August 22, 2002, Plaintiff's children were playing in Plaintiff's

---

[1] The Court notes that the attorney who submitted Plaintiff's response brief, Louis J. Vener, has not entered an appearance on behalf of Plaintiff.

backyard.  The Little's dogs entered Plaintiff's yard, and one of the Little's dogs bit Plaintiff's son. The dog attack was unprovoked.

Plaintiff submitted an unsuccessful administrative claim to KAFB for the attack on her son.  On September 9, 2005, Plaintiff filed a complaint in the United States District Court for the District of New Mexico.  (Docket No. 1).  Plaintiff's complaint seeks damages against the Government for the negligence of KAFB employees in failing to use due care by controlling dangerous animals such as the Little's dogs, and for violating "various regulations then applicable" (Docket No. 1 at ¶ 10).

The Kirtland Air Force Base Housing Office ("KAFB Housing") was aware that the Little's dogs were involved in at least one fight with another dog prior to August 22, 2002.  After this dog fight, SSgt. Little received an oral warning that his dogs would be removed from KAFB if another similar incident occurred.  Two days prior to the attack on Plaintiff's's son, Plaintiff made a report of neglect to KAFB Housing concerning the Little's failure to provide shelter to their dogs during a storm.  KAFB Housing spoke with Mrs. Little about obtaining shelter for the two dogs after receiving the report of neglect.  One week after the Little's dog bit Plaintiff's son, KAFB Housing sent the Littles an eviction notice based on failure to control the dogs.  On December 24, 2002, KAFB Housing entered an order banning vicious dogs, including pit bulls, from being kept as pets in base housing.

## II. Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to seek dismissal of a complaint for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  A court has discretion to consider affidavits and other documents when resolving disputed jurisdictional facts.  *New*

*Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).  The court's reference to matters outside the pleadings does not necessarily covert the motion to dismiss under FED. R. CIV. P. 12(b)(1) into a motion for summary judgment under FED. R. CIV. P. 56.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

The applicability of an exception to the FTCA is a jurisdictional issue. *See id.*  However, a court should resolve a motion to dismiss for lack of subject matter jurisdiction under either FED. R. CIV. P. 12(b)(6) or FED. R. CIV. P. 56 when the jurisdictional issues raised in the motion are intertwined with the merits of the case.  *Id.*  "Subject matter jurisdiction and the merits are considered to be intertwined 'when subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case.'"  *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) (quoting *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir.1987)).  "The determination of whether the FTCA excepts the government's actions from its waiver of sovereign immunity involves both jurisdictional and merits issues." *Bell v. United States,* 127 F.3d 1226, 1228 (10th Cir. 1997), (quoting *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991)).  The Court will therefore resolve the Government's motion as a motion for summary judgment under FED. R. CIV. P. 56.

A motion for summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

When the moving party does not bear the ultimate burden of persuasion at trial, the moving party may satisfy its burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  The non-moving party must then come forward with evidence demonstrating that there is a genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991).  The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials in that party's pleadings.  *Id.* at 891.  A fact is material if it could affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986).  A dispute over a material fact is genuine if a jury could find in favor of the nonmoving party on the evidence presented.  *Id*.  In evaluating a motion for summary judgment, the court examines the factual record and reasonable inferences therefrom in a light most favorable to the nonmoving party.  *Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10th Cir. 1997).

### *III.  Analysis*

#### *A.  No Genuine Issues of Material Fact*

The Government attached several exhibits in support of its motion, including a declaration of Helen T. Backett, the Acting Housing Manager at KAFB.  (Docket No. 16, Ex. A1) (Docket No. 17).  The declaration is signed and dated by Ms. Beckett, who declares "under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States of America that the foregoing is true and correct." (Docket No. 16, Ex. A1) (Docket No. 17).  Ms. Backett's declaration refers to and describes each of the Government's remaining exhibits, which include pertinent KAFB housing policies and regulations.

Plaintiff did not attach any exhibits to her response.  Instead, Plaintiff relies solely on her

argument that the Government's exhibits must be disregarded because they are neither sworn to nor certified.  However, Ms. Beckett's declaration, which refers to and discusses the remaining exhibits, was prepared under penalty of perjury in accordance with 28 U.S.C. § 1746.  Since Ms. Beckett's declaration is made under § 1746, her declaration may support the Government's motion for summary judgment and may be considered by the Court.  *See also Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 n.1 (10th Cir. 1994) ("[S]uch an unsworn statement made in compliance with [§ 1746] may be submitted in lieu of affidavits in summary judgment proceedings.").

Because Plaintiff did not present any admissible evidence with her response, Plaintiff has failed to demonstrate the existence of a genuine issue of material fact.  Moreover, Plaintiff is deemed to have admitted the Government's statements of facts since her response did not contain a concise statement of specifically disputed material facts. D.N.M.LR-Civ. 56.1(b)  ("All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.").  *See also* FED. R. CIV. P. 56(e).  The Court therefore finds that there is no genuine issue as to any material fact, and will next consider whether the Government is entitled to judgment as a matter of law.

### B. The Discretionary Function to the FTCA

The FTCA waives the Government's sovereign immunity for injuries caused by the negligent or wrongful acts or omissions of government employees committed while acting within the scope of their employment.  28 U.S.C. § 1346(b).  Under this waiver, the Government may be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  However, claims "based upon the exercise or performance or

the failure to exercise or perform a discretionary function or duty" by a government agency or a government employee are excepted from the FTCA's broad waiver of immunity. 28 U.S.C. § 2680(a). This discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). The discretionary function exception applies even if the government employees were negligent. *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998).

The Supreme Court has articulated a two-part analysis for resolving whether government conduct falls within the discretionary function exception to the FTCA. *Berkovitz v. United States*, 486 U.S. 531 (1988). Under *Berkovitz*, the court first must determine whether the government conduct at issue involves an element of judgment or choice. *Id.* at 536; *Aragon*, 146 U.S. at 823. If a specific and mandatory statute, regulation, or policy directs a course of action, then "the employee has no rightful option but to adhere to the directive" and the discretionary function exception will not shield the employee's conduct from liability. *Berkovitz*, 486 U.S. at 536; *Aragon*, 146 F.3d at 823.

However, if the conduct involves an element of judgment, the court must next "determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536-37; *Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002). The discretionary function exception "protects only governmental actions and decisions based on considerations public policy." *Berkovitz*, 486 U.S. at 537. Through this inquiry, the discretionary function exception "prevent[s] judicial 'second-guessing' of legislative and

administrative decisions grounded in social, economic, and political policy through the medium of an action of tort." *Id.* at 536-37. The subjective intent of the federal employee is irrelevant, as the salient question is whether the nature of the conduct implicates public policy concerns. *Lopez v. United States*, 376 F.3d 1055, 1057 (10th Cir. 2004). "Only decisions that are 'susceptible to policy analysis' are protected by the discretionary function exception." *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1538 (10th Cir. 1992) (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).

*1. Element of Choice or Judgment*

The Government attached several United States Air Force and KAFB regulations and housing brochures to its motion to dismiss. The Government argues that none of these regulations required KAFB Housing to take a specific and mandatory response to the Little's dogs before the attack on Plaintiff's son occurred.

Air Force Instruction 32-6001 is a mandatory instruction which "provides guidance for establishing and operating a government-controlled family housing program" (Docket No. 16, Ex. A1). Section 1.1.2 of the Instruction gives the Air Force authority to formulate housing policies and procedures for the assignment and termination of military housing. Section 1.3 of the Instruction gives an Installation Commander responsibility for managing housing programs. The Installation Commander is given "broad authority to plan, program, and determine the best use of resources" (Docket No. 16, Ex. A1). The instruction delineates various situations which will result in the termination of family housing. For example, § 7.2.5 of the Instruction states that "[Installation] Commanders may require a member to terminate [family housing] . . . when the conduct or behavior of the member or dependents is contrary to accepted standards or is adverse

to military discipline." (Docket No. 16, Ex. A1).

Under § 1.5 of Air Force Instruction 32-6001, the Housing Flight Chief administers the base's housing program. The Housing Flight Chief is responsible for "[d]eveloping an installation specific housing brochure following the format provided by [the Air Force] web site" (Docket No. 16, Ex. A1 at § 1.5.22). The Air Force web site provides a sample Air Force Housing Brochure, which the Housing Flight Chief should "modify according to the requirements of your base." (Docket No. 16, Ex. A2 at 1). The sample brochure contains two sections addressing the ownership and control of pets on base housing. These sections suggest language requiring pets to be leashed when outside the home or a fenced yard, and instructing base housing occupants to "respect the privacy of your neighbors." (Docket No. 16, Ex. A2 at 10).

The KAFB family housing brochure is a guide for base housing occupants' myriad responsibilities. (Docket No. 16, Ex. A3). Compliance with the brochure is mandatory for base housing occupants. The brochure contains a section on pet control which requires pet owners to control the animal at all times. The brochure further states that "[f]ailure to control your pet will subject you to disciplinary action and could result in the removal of the pet from the base or possible eviction . . . [a]ny unprovoked bites will be considered a violation and immediate eviction action will be initiated." (Docket No. 16, Ex. A3 at 17). The KAFB housing brochure refers to KAFB Instruction 31-205 for additional information on pet owner responsibilities.

KAFB Instruction 31-205 establishes policies and procedures for animal control on KAFB. (Docket No. 16, Ex. A4). The Instruction states that after KAFB Housing receives three nuisance complaints concerning a particular pet, KAFB Housing will make a recommendation to the pet owner's Support Group Commander for either administrative punishment or withdrawal

of base housing.  The Instruction defines 'nuisance complaints' to include "excessive barking, running loose, destruction of property, failure to pick-up droppings on a daily basis, etc., or one unprovoked bite" (Docket No. 16, Ex. A4, at § 2.3.1).  Compliance with the Instruction is mandatory.

Air Force Instruction 32-6001 does not contain a specific scheme for regulating pets on base housing.  The Instruction refers to a sample housing brochure, which does contain language pertaining to the regulation and control of pets.  However, this sample housing brochure is not mandatory.  The fact that KAFB changed its pet policy after the attack on Plaintiff's son further demonstrates the non-mandatory nature of the sample brochure.  Moreover, even if the sample housing brochure was mandatory, the language used by the sample housing brochure, suggesting leashing pets and respecting the privacy of neighbors, is too general to mandate a specific governmental response to the Little's dogs.

Unlike Air Force Instruction 31-6001 and the sample housing brochure, both the KAFB housing brochure and KAFB Instruction 31-205 contain more specific policies on pet control.  Both the brochure and the Instruction detail more specific responses to pets presenting a danger or a nuisance.  However, the brochure and Instruction give an element of choice or judgment to KAFB employees even when three nuisance complaints have been received.  For example, under KAFB Instruction 31-205, KAFB Housing may choose between recommending either administrative punishment or withdrawal of base housing to the Support Group Commander.  The Support Group Commander may choose to accept or reject KAFB Housing's suggested response.  Thus, KAFB Instruction 31-205 does not require a specific and mandatory course of action for controlling wayward pets.  The publications provided by the Government contain discretionary

9

language "that give[] federal agencies a choice or judgment on what action to take, if any." *Aragon*, 146 F.3d at 824.

Moreover, it is not clear that the requirements of the brochure and Instruction would have applied to Little's dogs prior to the attack on Plaintiff's son.  The Little's dogs were involved in one documented dog fight, after which SSgt. Little received a warning.  KAFB was also aware of one report of neglect of the dogs, after which KAFB spoke with Mrs. Little about obtaining shelter for the dogs.  Prior to the attack on Plaintiff's son,  KAFB had neither received three nuisance complaints, nor had the Little's dogs engage in any unprovoked bites.  Since the criteria of the KAFB housing brochure and KAFB Instruction 31-205 had not been fulfilled, the brochure and Instruction did not mandate any specific action regarding the Little's dogs prior to the attack on Plaintiff's son.

The Court therefore finds that the Government's challenged conduct was discretionary under the first element of the *Berkovitz* test.

### 2.  Considerations of Public Policy

The next inquiry is whether the governmental conduct is "susceptible to policy analysis." *Gaubert*, 499 U.S. at 323; *Berkovitz*, 486 U.S. at 537.  The relevant question is whether the decision "implicates the exercise of a policy judgment of a social, economic, or political nature." *United States v. Duke*, 131 F.3d 1407, 1411 (10th Cir. 1997).  The Supreme Court has indicated that "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

As stated above, Plaintiff has failed to submit any evidence tending to show that KAFB's actions were not based on considerations of public policy. Additionally, the Court finds that KAFB's decision implicates a policy judgment. In formulating a pet policy and in responding to situations involving pets on base housing, KAFB must weigh several social factors. For example, KAFB Housing may determine that the appropriate response to a dog that gets in a dog fight is to verbally warn the dog's owner rather than requiring the dog's removal from the base. In order to make that determination, KAFB must weigh the need to make base housing attractive to Air Force personnel against the need to promote health and safety on the base. Since the decision to take a certain response to the Little's dogs prior to the attack on Plaintiff's son is susceptible to policy analysis, the Court finds that the challenged conduct was discretionary under the second *Berkovitz* factor.

The Court therefore concludes that the challenged governmental conduct falls within the discretionary function exception to the FTCA, and the Court lacks subject matter jurisdiction.

*C. Vicarious Liability*

Plaintiff does not focus her response to the Government's motion by attempting to establish the non-discretionary nature of the Government's actions. Instead, Plaintiff suggests that she may be able to amend her complaint to seek liability against the Government under a theory of vicarious liability similar to the theory used in *Lutz v. United States*, 685 F.2d 1178 (9th Cir. 1982). In *Lutz*, the Ninth Circuit held the United States vicariously liable for the negligence of a military member whose dog had bitten a child living in base housing. The Ninth Circuit reasoned that the military base's regulations had assigned an affirmative duty to the military member "to protect the health and safety of all base residents by controlling the animal." *Id.* at

11

1183. Persuaded by the "unique situation" of military housing, where "the employment relationship of residents of military bases continues even during the off-duty, at-home hours," the court found that control of the dog was a duty within the scope of the military member's employment. *Id.* The United States could thus be held vicariously liable for the military member's breach of his duty to control the dog.

Several courts have rejected the reasoning and conclusion of *Lutz*. *Bennett v. United States,* 102 F.3d 486 (11th Cir. 1996); *Chancellor v. United States*, 1 F.3d 438 (6th Cir.1993); *Piper v. United States*, 887 F.2d 861 (8th Cir.1989); *Nelson v. United States*, 838 F.2d 1280 (D.C.Cir.1988); *Stanley v. United States*, 894 F.Supp. 636 (W.D.N.Y.1995); *Brotko v. United States*, 727 F.Supp. 78 (D.R.I.1989). As noted by the court in *Nelson*, "[t]o hold the government potentially liable for all damage done by conduct on a military base that violates any one of the many base regulations would expand liability in ways inconsistent with the idea that the FTCA must be strictly interpreted as a limited relinquishment of sovereign immunity." *Nelson*, 838 F.2d at 1284. The Court agrees with the views of these courts and rejects the reasoning in *Lutz* as being inconsistent with the purposes of the FTCA.

Further, since the Court rejects *Lutz* as a basis for liability in this case, any amendment of Plaintiff's complaint in an attempt to assert claims against the Government would be futile. *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993) (A court normally refuses to permit amendment only "on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."). However, the Court reminds Plaintiff that she may still have a cause of action against the Little family.

The Court therefore will grant the Government's motion, and will enter summary judgment in favor of the Government contemporaneously with this order.

IT IS THEREFORE ORDERED THAT Defendant United States of America's Motion to Dismiss, or in the Alternative, for Summary Judgment (Docket No. 16) is GRANTED.

_____
SENIOR UNITED STATES DISTRICT JUDGE